## Town of St. JOHNSBURY *v.* Town of WATERFORD.

The right of one town to recover of another, expenses incurred in the support of a pauper, is not affected by the residence of the pauper, during the pendency of the action.

It is not error in the county court, in stating in a bill of exceptions the charge given to the jury, to refer to another bill of exceptions, as containing the charge given in the case ; it being but the making a copy of the charge in one case, a part of the bill of exceptions in the other.

The ability of paupers to maintain themselves is a pecuniary ability, and is not affected by the manner in which they have previously disposed of their property, if the disposition has been so made as to be binding on them.

The declaration of the pauper or her husband are not evidence in the case.

Towns have a right to recover of other towns chargeable with the maintenance of insane paupers, the expense of supporting them at an insane asylum, unless it increase the expense of maintenance.

Towns may recover, in like manner, for clothing destroyed by an insane pauper, without fault of the overseers or keepers.

Towns may, in like manner, recover for money paid to other towns for the support of paupers upon orders of removal, afterwards vacated, if it do not exceed the expense of keeping in the town procuring the removal.

THIS was an action of assumpsit for the recovery of certain expenses, incurred by the plaintiffs, in boarding, taking care of, and doctoring one Caroline C. Rowell, alleged to be a transient person, founded upon the 12th section of the act in relation to the support and removal of paupers. The gen-

eral issue was pleaded and joined to the country. By the schedule of claims filed by the plaintiff, it appeared that the expenditures commenced June 12, 1840, and terminated in October of that year.

The plaintiff introduced evidence tending to show, that the said C. C. Rowell was the wife of one Samuel Rowell, Jr.; that they were lawfully married, on or about the 5th of January, 1834 ; that said Samuel Rowell, Jr., was the son of Samuel Rowell, and was born on or about the 30th of May, 1808 ; that the father moved into Waterford about the month of January, 1815, and continued to reside there about three years ; that said Samuel Rowell, Jr., in May, 1840, while residing with his wife and several children, at Concord, Vt., entered into a bargain with his brother, James C. Rowell, to the effect that he sold and conveyed to the said James his farm, valued at $1000, all his stock, farming tools, and every other kind and description of personal property whatever, except one bed and one cow, in consideration of which, said James agreed to maintain and support, during minority, his, said Samuel's, children — no support being stipulated for the wife—and pay all the then existing debts owing by said Samuel ; that, about the same time, he carried his wife to her father's, Enos Page's, in St. Johnsbury ; that she remained there a short time, and then went to the house of David Goodall, in St. Johnsbury, who finding her to be insane, at times, and very troublesome, reported her situation to Mr. Lee, one of the selectmen of the town, with a view to obtain support for her from the town ; that said Lee made known her situation to Lambert Hastings, overseer of the poor of said town, who proceeded to provide for her in behalf of the town ; that said Goodall charged nothing for her support, while she resided with him ; that, some time afterwards, an order of removal was made, by the procurement of said St. Johnsbury, of said C. C. Rowell, to the town of Kirby, who took an appeal to the county court, and such proceedings were had that said order of removal was reversed ; that she was maintained some time at the poor-house in St. Johnsbury, and then taken by the overseer of the poor, to the insane hospital, at Brattleboro, where she remained about three months, and then, without material abatement of her insanity, was brought back to St. Johnsbury, where she remained, supported by

the town, until the bringing of this action; that said Samuel soon after said bargain, left the state and remained absent ten months, when he returned to Concord and lived in the family of said James C. Rowel, and with his own children, until the spring of 1842, when he, with his children, removed to Bradleyvale, Vermont; and that James paid several of Samuel's debts.

Defendant's counsel, on cross-examination of one of plaintiff's witnesses, inquired what he heard Samuel say, since said conveyance and sale to his brother, about the character and object of said sale and conveyance; which was objected to by plaintiff's counsel, and rejected by the court. Defendant's counsel also inquired, on cross-examination of the witness, what he had heard said Samuel say, since said conveyance, he was worth when he made it. This being objected to, was rejected by the court.

The defendant's counsel objected to the admission of evidence, in support of the charges in the schedule for money paid the town of Kirby, for support of the pauper, and for articles destroyed by said C. C. Rowel, being her own apparel, and for expenses of transporting her to and from Brattleboro, and while residing there. The court overruled the objection and admitted evidence to these several points.

The defendant introduced evidence tending to show, that when said Caroline C. Rowell was carried by her husband to said Enos Page's (her father's) house; she remained there about three weeks, for which he charged nothing, and that he did nothing towards throwing her onto the town for support; that Samuel Rowell, Jr., at the time he transferred his property to his brother, was worth from $400 to a $1000; that he was a healthy, able-bodied man; that when he removed with his children to Bradleyvale, he took with him several articles of property, which he had previously transferred to his brother James; that he had resided in the town of Concord, Vermont, seven years, continuously, previous to the bringing of this action; that from the time of his marriage, he resided in said Concord, till he sold out to his brother in 1840; and that after his return from out of the state, in March, 1841, he continued to reside there till May, 1842.

The counsel for defendant requested the court to charge the jury, that if they should find that the conveyance by S. Rowell, Jr., to his brother, was in trust, merely, for the support of his children, to the exclusion of his wife, they should not regard him as being divested of such property, in reference to the question of his ability to support his wife ; that, if the jury should find that said Samuel had resided seven successive years in said Concord, next preceding the trial of this cause, the plaintiffs could not recover ; and that the absence from the state nine or ten months, leaving his children in Concord, would not constitute, in law, any interruption to his residence there, with reference to the question of gaining a settlement. The court refused to charge as requested ; but instructed the jury as follows : — There was testimony given in the case, by the plaintiff, tending to show, that said Samuel Rowell, Jr., at the time he sold his property to his brother, had very little more than sufficient to pay his just debts, which his brother was to have paid, and has since paid ; and the jury were charged, that the question, whether said Samuel, Jr., was of sufficient ability to maintain his wife, at the time she was supported by the plaintiffs, and to pay the plaintiffs therefor, was a question for them to determine, upon all the circumstances in the case ; that the ability spoken of, was, in the statute, a pecuniary ability, which must have been such as would enable him to have paid the expense of his wife's support at the time ; that, if he had, before the time of such expense incurred by the plaintiffs, wholly divested himself of all his property, by assigning the same, absolutely and unconditionally, to his brother, for the payment of his debts and the maintenance of his children, and that, thereafter, he had no intererst in, or control of, the same, such property could not be taken into the account in determining his ability to pay such expense ; that the fact of said Samuel, Jr.'s having resided in said Concord seven years, next before the trial of this action, was unimportant, provided such residence was not completed before the commencement of the action and the accruing of the expense. The legal import of the term " residence " was explained in the same manner as it was in *Kirby* v. *Waterford,* and in a manner not objected to by the counsel for Waterford ; and in regard to the absence from the state, the jury were told it would depend upon the existence

or not of the *animus revertendi*, as explained in that case. In regard to clothes destroyed by the pauper and replaced, the jury were told if that happened without any fault of the plaintiffs, they might be recovered for, so far as they were necessary, and that the expense of keeping the pauper by Kirby, and paid by the plaintiffs, if it did not exceed what they must have expended in keeping her at home, might be recovered ; and so, also, of the expense of maintaining her at the asylum, and transporting her there and back again. To which decisions, and charge of the court, the defendant, after verdict and judgment for the plaintiff, excepted.

*C. Davis,* for defendant.

It was indispensable that the plaintiff should show that the town of Waterford was the place of legal settlement of C. C. Rowell, at the time of furnishing the support, or at the time of bringing the action — we think the latter. The county court instructed the jury that a residence of seven years, continuously, of S. Rowell, Jr., in Concord, previously to the bringing of the action, which the case shows to have been proved, would not avail the defendants unless it were also shown that the septenary was completed before the expenditures were made. If this is to be understood as meaning before the expenditures commenced, it was clearly erroneous. The specification of plaintiffs' claims, made a part of the case, shows that the support commenced June 12th, 1840, and continued without interruption, reckoning the short residence in Kirby under the order of removal, and the long residence at the insane hospital, at Brattleboro, as a continued support, as the plaintiffs do, until the bringing of the action in October of the same year. If the court meant the termination of the period of support, the jury should have been informed, that if they believed the evidence which tended to prove a continued residence of S. Rowell, Jr. in Concord seven years previously to the bringing of the action, the town of Waterford was not the place of legal settlement of the transient person, and their verdict should, of course, be for the defendant. As no evidence seems to have been introduced tending to prove the contrary, it appears impossible to account for the verdict on any other grounds than the

want of explicit instructions on this point. Manifest injustice seems to have been done by it.

On the question of the inability of Rowell to support his wife, we think the instructions requested by defendant's counsel should have been given. They were, that an assignment in trust, for the support of his children, (leaving his sick wife unprovided for) of all his property real and personal, with the exception of one or two trifling articles, especially when that property amounted to so considerable a sum as in this instance, could not be regarded as divesting him of ability to support his wife, provided the possession of the property could be considered as conferring such ability. It is true the court do not, in express terms, negative this proposition. They say 'if he, Rowell, had wholly divested himself of all his property, by assigning the same, absolutely, and unconditionally to his brother, for the payment of his debts and the maintenance of his children, and that, thereafter, he had no interest in the control of the same, such property could not be taken into the account,' &c.

But the fact of the sweeping character of the assignment— its being made to a near relative—the purpose to which it was to be applied—the fact of the sudden return of Samuel, after his wife had become quartered upon the town of St. Johnsbury, and a controversy between that town and Waterford in relation to her support had sprung up, and his settling down with his children upon the real estate he had conveyed away, and his resumption and carrying away with him, some time after, of a portion of the personal property he had sold—afforded such cogent reasons for believing that the assignment was merely colorable and collusive, or was in trust for certain purposes, that the defendants were entitled to specific instructions as to the effect, if the jury should adopt the conclusion to which these facts strongly tended.

There is manifest error in refusing to instruct the jury, in relation to the question whether Rowell's leaving the state for 9 or 10 months, under the peculiar circumstances indicated by the evidence in this case, would or would not, interrupt his residence in Concord, where all his family, except his wife, remained, in contemplation of the act which confers a legal settlement as a consequence of seven years continued residence.

The request made by defendant's counsel was fully justified by the evidence, if believed.

But the court contented themselves by alluding to the 'animus revertendi,' as explained in the case of *Kirby* v. *Waterford*. Of that explanation we can take no notice here. The records and files in that case are not made a part of this case, and cannot therefore be referred to, to show what instructions were given in this. This point was material, as there was evidence that Rowell commenced his residence in Concord sometime previous to his marriage in January, 1834, and continued it, if this absence did not interrupt it, till after this suit was instituted; and, from its nature, it was one which peculiarly required elucidation by the court.

The court erred also in excluding, on cross examination of one of the plaintiffs' witnesses, testimony as to the admissions of S. Rowell, Jr., made after the conveyance to his brother, as to the character and objects of that conveyance. His declarations subsequent to the conveyance, seem to have been excluded, upon a supposed but mistaken analogy between this case and those where the conveyances are impeached for fraud, in which latter cases, *expost facto* declarations of the grantors are, with great propriety, not admitted to defeat the rights of the grantees.

As to the sum paid to the town of *Kirby* for the support of Mrs. Rowell, while remaining there under an order of removal, afterwards vacated — the expenses of transporting her to and from Bratleboro and supporting her while there at the asylum — the destruction of clothing and other property by her while in the poor-house at St. Johnsbury, we say that each and all of these classes of expenditures seem to be wholly irreconcileable with the terms and scope of the 12th section of the statute.

————— ———————, for plaintiff.

The opinion of the court was delivered by

REDFIELD, J. — The great number of questions arising upon this bill of exceptions seems to require that they be very briefly disposed of in the opinion.

1. It is objected to the proceedings in the court below, that it does not appear that Caroline C. Rowell's legal settle-

ment was in the town of Waterford, at the time the expenses were incurred. But it does appear by the bill of exceptions, that it was conceded, at the trial, that such was the fact, unless defeated by seven years' residence, in Concord. The jury were told that, unless this residence was completed, before the expense incurred, or the bringing of the action, it would not affect the right of recovery. They have, then, negatived that fact.

CALEDONIA,<br>March,<br>1843.<br><br>St. Johnsbury<br>v.<br>Waterford.

2. There is no objection to the charge in defining the term, " residence," except the reference to the other bill of exceptions, by the judge. We do not understand, by this, that the jury were referred to the exceptions in the other case, but only that the judge, in drawing up the case, to save the labor of writing out the charge twice, put both cases on this point, where they were precisely parallel, upon the same bill of exceptions. Nothing is more common than to try two, or more cases, in this court, upon one bill of exceptions. We see no more objection to referring to another bill of exceptions, as part of the case, than to a copy of record, or an original contract. It is but making a *copy of the charge*, in the other case, a part of this.

3. We think the charge, in regard to Rowell's ability to support his wife, correct. He had effectually disposed of all his property ; and the mode was unimportant, as it was binding upon him, and upon all others, unless done to defeat their rights, which it does not appear was attempted to be shown in the present case.

4. The declarations of Rowell, the husband of the pauper, were mere hearsay.

5. As to the sums paid to Kirby, and at the insane asylum, they cannot be objected to, as they did not increase the expense of her maintenance. And if the expense had been positively increased, by sending an insane pauper to the asylum, I have no doubt, it would, under the present enlightened views, upon the most judicious and humane mode of treating such cases, be considered necessary expense of comfortable support. I trust, indeed, the *state* is not prepared to establish a system of treatment of insane paupers, which would be esteemed disgraceful in the case of *relatives* of sufficient ability.

6. The expense of clothing, destroyed by the pauper, was

not only necessary, but indispensable to decency. This expense must be borne somewhere. Of course it must come where the principal burden of expense of maintenance falls.

Judgment affirmed.