### THE TOWN OF DERBY v. THE TOWN OF SALEM.

#### *Pauper. Evidence.*

The declarations of a pauper as to his then place of residence, are not admissible in evidence in an action to which he is not a party, for the purpose of proving the *fact* of his residence at that place.

On the trial of an appeal from an order of removal of a pauper from the town of Derby to the town of Salem, the question being whether the pauper resided in the latter town at the time of its organization, evidence was introduced by the town of Salem, tending to show that, previous to that time, the pauper left that town and went to Derby to live with one S. *Held,* that it was competent for the town of Derby, for the purpose of rebutting this evidence, to put in evidence, in connection with other corroborating testimony, an account book of S., kept in his own hand writing, which contained an account with the pauper, the first item of which was for moving him from Salem to Derby, at a period later than the organization of the former town.

A duly authenticated copy of the record in a town clerk's office of the birth of certain children is admissible as evidence of the facts which it sets forth; notwithstanding such record was not made cotemporaneously with the events it narrates, but was made some time afterwards, from a statement then furnished by the mother of the children. This objection goes merely to the *weight* of the record as evidence, not to its admissibility.

The statute in force in 1822, in regard to obtaining settlement as a pauper in a town at the time of its organization (see Slade's Comp. p. 382, sec. 7, identical with Comp. Stat. p. 128, sec. 7), applies to unnaturalized foreigners as well as to native or naturalized citizens.

APPEAL from an order of removal of Anthony Traversee and Nancy, his wife. The defendants pleaded that said paupers were unduly removed, because their legal settlement was not in the town of Salem, and trial by jury, at the June Term, 1857,— POLAND, J., presiding.

The town of Derby claimed that the paupers had a settlement in the town of Salem, by reason of their having been resident inhabitants in that town at the time it was organized on the 30th day of April, 1822. Anthony Traversee was a Frenchman, but had resided in this state, in various places, from 1812, and in 1817 married the said Nancy in Salem. The town of Derby gave evidence tending to prove that Anthony and his family resided in the town of Salem at the time of its organization. The town of Salem then gave evidence tending to prove that said Anthony, after January, 1822, and before April of that year, removed with his family from the town of Salem to Major Stewart's, in Derby, and was residing there at the time the town of Salem was organized. The town of Salem then offered a witness to prove that in December, 1822, or January, 1823, Traversee was at Coventry, and stated to the witness that he (Traversee) had then come from Derby, that he lived there, and had resided there for a year previous to that time. The town of Derby objected to this evidence, and the same was excluded by the court, to which the town of Salem excepted. It was conceded that the paupers are now, from age and infirmity, both incapable of testifying. The town of Derby claimed that the time Traversee moved to Derby and lived with Major Stewart, was not in 1822, but in 1826. The town of Derby then called Hon. Emery Stewart as a witness, who testified that he is a son of Major Stewart, that his father is deceased, that he recollected that Traversee and his family lived at his fathers, but could not tell the year; that he came early in the spring, and moved away before haying the same year, and that he lived there but once. The witness then produced his father's book of accounts, and testified that it was the book on which his father kept his accounts, and that the account against Traversee on said book was in his father's handwriting. This book was then offered in evidence by the town of Derby, but was objected to by the town of Salem, but the court admitted the same in evidence, to which the town of

Salem excepted. The first charge on said book to Traversee was for moving him from Salem to Major Stewart's, in the spring of 1826. The town of Derby also offered in evidence a copy of the Salem town clerk's record of the birth of the children of said Anthony Traversee, which was objected to, but the same was admitted, to which the town of Salem also excepted. This was offered for the purpose of showing the time of the birth of some of the children, and was accompanied by evidence to prove the place of birth. The town of Salem, in connection with said record, called the town clerk of Salem who testified that the statement of the births of said children was given to him to record, about 1835, or soon after, by Mrs. Traversee, a period long after the date of most of the births therein recorded. The town of Salem claimed and requested the court to charge, that if said Traversee was residing with his family in Salem at the time that town was organized, he gained no settlement in that town thereby, because he was an unnaturalized foreigner. But the court declined so to charge, but did charge the jury, that if said Traversee was residing with his family in the town of Salem at the time it was organized, and had resided in the state one full year before that time, he thereby acquired a legal settlement in the town of Salem. To which charge and refusal to charge as requested, the town of Salem excepted. The jury returned a verdict that the paupers were duly removed.

*Slade & Edwards,* for the defendants.

*J. H. Prentiss* and *Peck & Colby,* for the plaintiffs.

The opinion of the court was delivered by

BARRETT, J. I. For the purpose of charging the town of Salem with the settlement of the pauper (Traversee), the plaintiff town gave evidence tending to prove that said pauper, with his family, was residing in the town of Salem on the 30th day of April 1822—the day on which said town became organized. The town of Salem, on the other hand, claimed that said pauper was, on that day, residing in the town of Derby; and for the purpose of proving the fact to be so, offered a witness to testify that in Decem-

ber 1822, or in January 1823, said Traversee was at Coventry, and then stated to the witness that he had come from the town of Derby, —that he lived there, and had for a year previous to that time. This offer was objected to, and was excluded by the court. It is to be remarked that said pauper is not a party in interest in this suit, and so the admissibility of the evidence offered does not fall under the rule governing admissions made by a party against his interest.

The defendant claims that it is governed by the rule under which sayings are admissible, as part of the *res gesta*. What is the *res gesta*, of which it is claimed that the sayings of the pauper are a part? Obviously the *fact* of his actual residence in the town of Derby on the 30th day of April, 1822. And yet *this fact* is the very point in controversy. Upon the reason of the thing, it hardly seems congruous to make the admissibility of the evidence depend upon the assumption of the existence and truth of the controverted fact, which the evidence is offered to prove. In the argument it was likened, by counsel for the defendant, to the sayings of a tenant in possession, touching the character in which he was holding. But obviously the analogy would not be complete nor applicable, unless it were held that his sayings were proper evidence of the very fact of possession,—the fact which must be taken for granted, before any foundation for the sayings of the tenant as evidence can exist. It will hardly be claimed that such a position would be tenable, either on principle or authority. All the cases cited show that the sayings were admitted to prove the *character* of a possession which was conceded, or was proved by other evidence, to exist; and not to prove the *fact* of *possession*. 2 Pick. 536, *West Cambridge* v. *Lexington*. See cases cited from Cow. & Hill's notes, vol. 2, p. 601.

The point in controversy in this case was the place of the residence of the pauper, on the 30th day of April, 1822. The offer was to give evidence of what he said about it, in December or January next after that day. Perhaps it might seem entitled to a more favorable consideration, if the offer had been to show what the pauper said on that day, as to where his residence *then* was. Yet even then it would be difficult, either upon principle or rule, or the analogy of adjudged cases, to hold that the evidence would have been admissible. Clearly the case of *Londonderry* v. *Ando-*

*ver*, 28 Vt. 416, cited by the defendant's counsel, does not sustain his view, but bears in the other direction. It clearly limits such evidence, if admissible as part of the *res gesta*, to explaining the *character* of the residence, and puts it doubtfully whether it would be admissible for that purpose. The case is an authority against the admissibility of such evidence, as tending to prove the *fact* of residence in the town in question. To the same effect are *Cherry* v. *Slade*, 2 Hawk. 400 ; *Arkwright* v. *Stansbury*, 5 Car. & Payne 575, and all the cases cited by counsel from 2 Cow. & Hill's notes.

The fact of residence is assumed. The sayings were admitted to show the character of the residence, as affected by the *intention* of the party, as manifested by his sayings. This is emphatically true of *Gorham* v. *Canton*, 5 Greenl. 266 The case of *Ward* v. *Oxford*, 8 Pick. seems to carry the point beyond the limit prescribed by all the other cases that have come to our notice. Yet in that case the distinction is taken between the evidence there admitted "and the mere verbal declaration of the pauper," "which," says the learned Judge, " has been ruled not to be evidence."

But in this case the offer as made was clearly to be excluded by force of the well settled rule of law negatively stated by Prof. Greenleaf, "that when the declarations offered in evidence are merely narrative of a past occurrence, they cannot be received as proof of the existence of such occurrence." 1 Greenl. Ev. § 110, p. 135. See also *Haynes* v. *Rutter* 24 Pick. 242.

These views render it unnecessary to consider or indicate, what effect the old age and infirmity of the pauper and his wife should have upon the question, whether it would be competent to give in evidence their sayings, as proof of a fact, as to which they might be called to testify directly.

II. The next exception was taken to the decision of the court, permitting the book of accounts of Major Stewart to be given in evidence.

The defendant had introduced evidence tending to prove that said Traversee, after January, and before April of the year 1822, removed with his family from the town of Salem to Major Stew-art's in the town of Derby, and was residing in Derby at the time the town of Salem was organized. To meet this evidence, the plaintiff offered in evidence the account book of said Stewart, in

connection with evidence tending to prove that said Stewart was dead; that it was the book on which he kept his accounts, and that the charges on said book against said Traversee were in his hand writing, etc., etc., as is detailed in the bill of exceptions. The first charge against Traversee on said book, was for moving him from Salem to Major Stewart's, in the spring of 1826. This case, on this point, can not well be distinguished from that of *Augusta* v. *Windsor*, 19 Maine 317, and many other American and English cases which stand upon sound reason, and which have established and illustrated a rule that is well understood and often applied. In the case before us, the entry in the book is corroborated by other circumstances, in a manner that brings it fully within the rule announced by Justice TAUNTON, in *Patteshall* v. *Turford*, 3 B. & Ad. 890, which is adopted in the 19th Maine, cited *supra*, and is propounded as the law of the subject by the most authorative text books. See 1 Starkie's Ev. 299 *et seq*; 1 Greenl. Ev. § 116 § 120.

III. The next exception is taken to the admission of a copy of the record made by the town clerk of Salem, of the birth of the pauper's children. It is stated in the bill of exceptions, that in connection with said record the defendant town called as a witness the said town clerk, who testified that the statement of the births of the children was given to him to record, about the year 1835, or soon after, by Mrs. Traversee. It seems that this testimony was given *after* the decision to admit the record had been made, and it had been put as evidence into the case; and so this testimony constituted no part of the ground of objection to the admission of the record which was overruled by the county court.

It being the official duty of the town clerk to make such a record, a duly authenticated copy of it, was, *prima facie*, admissible as evidence of the facts which it embodied; Slade's Stat. 415–16; 1 Greenl. Ev. § 483–4.

But even if the objection had been predicated upon the testimony given by the town clerk, we think it should not have been sustained. The record was admissible. The weight to be given to it, as evidence of the time of the birth of some of the children, was properly within the province of the jury to determine, in view of the testimony given by the town clerk. In the absence of anything showing the contrary, we must assume that the jury received proper

instructions on this subject. We think the exception was not well taken.

IV. The request for a charge, "that if said Traversee was residing with his family in Salem at the time said town was organized, he gained no settlement in that town thereby, because he was an unnaturalized foreigner," was properly refused. The statute, then in force, is conclusive on the subject; Slade's Stat. 382. The language is, " *any person of full age, etc.*" It makes no distinction on account of place of birth, citizenship, or any other incident. The statute instituted the settlement upon the exclusive facts of the person being of full age, having resided in the state one full year, and having his or her home in any town in this state, at the time when the same shall be organized.

The charge, in this respect, was warranted by the evidence, and required by the law.

All the questions raised in the case are thus disposed of, and the judgment of the county court is accordingly affirmed.