## THE CITY OF HARTFORD vs. JULIA CHAMPION.

Hartford Dist., Oct. T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and SEYMOUR, Js.

The defendant, who had been domiciled in *H* and had paid her taxes there, claimed to have removed to *S*, and to have acquired a domicil there. Held that it was necessary for her to prove a residence in *S* so permanent as to exclude the existence of an intention to make a domicil elsewhere, as well as of an intention to return to *H*.

It being admitted that the defendant had gone to *S* to reside either temporarily or permanently, the question became wholly one of intent: was it her intent to change her domicil from *H*?

To prove the character of her residence in *S* the defendant offered a witness who testified that the defendant lived in the house of the witness in

City of Hartford v. Champion.

that place "just as the rest of her family did." On cross-examination she was asked whether she did not sometimes get her dinners at a restaurant. Held admissible, both for the purpose of finding what the witness meant by the defendant's living at her house just as the rest of her family did, and as bearing on the claim of the defendant that she was making S her home.

The defendant produced receipts showing settlements for her board while staying in S, which were drawn by her, but did not show the sums paid, and on cross-examination was asked why the receipts did not state the amounts paid. Held admissible, as tending to show that the receipts were intended to be deceptive and that she did not stay in S so much time as she claimed.

A witness for the defendant testified as to her residence in S and as to how often and under what circumstances he had seen her there. Held that on cross-examination he might be asked about his observation of a person who lived in the next house, to test his memory and his habit of observation.

The defendant having neglected to return a sworn list of her taxable property in H, the assessors were by law authorized to make a list for her. The list made by them contained the following item—"Insurance stocks, $81,763." Held not to be insufficient by reason of its not specifying the different insurance stocks.

A statute passed in 1883 provided that ten per cent might be added by the assessors to the lists made by them for persons neglecting to make and return a sworn list, and for the second year's neglect twenty per cent, and thirty per cent for the third year. This statute was repealed in 1885, and the addition to be made to the lists in such cases limited to ten per cent. Held not to affect additions of twenty and thirty per cent made by the assessors to lists in 1883 and 1884, for the taxes upon which suit was brought after the repeal of the statute.

It is the duty of the court to give the jury such instructions as are correct in law, adapted to the issue, and sufficient for their guidance in the case before them. If this is done it is immaterial that the instructions asked for are not given.

[Argued November 13th—decided December 30th 1889.]

ACTION to recover taxes claimed to be due to the plaintiff city from the defendant; brought to the Superior Court in Hartford County, and tried to the jury before *F. B. Hall, J.* Verdict for the plaintiff, and appeal by the defendant for error in the rulings and charge of the judge and in the omission to charge as requested. The case is fully stated in the opinion.

*A. P. Hyde* and *C. H. Briscoe*, with whom was *J. P. Andrews*, for the appellant.

*W. F. Henney,* with whom was *J. H. Brocklesby,* for the appellee.

ANDREWS, C. J.   The defendant is an elderly lady of large wealth and never married.   She had lived in the city of Hartford quite a number of years prior to 1882 with an only brother, an old man, a bachelor, in feeble health, and who appears to have been her only near relative living. During these years she paid taxes in Hartford.   In the year 1882 she did not return any list of her taxable property to the assessors, and thereupon the assessors filled out a list for her, putting therein all the property they had reason to believe was owned by her liable to taxation at its actual valuation, and adding thereto ten per cent of such valuation.   In the year 1883, upon a like omission by her to return a list, the assessors again filled out a list for her and added thereto twenty per cent; and again in 1884, and added thirty per cent; and again in 1885.   Taxes were laid on these several assessments, to recover which this suit was brought, pursuant to section 3901 of the General Statutes.   The case was tried to a jury and the plaintiff had a verdict.   The defendant has appealed.

For the purpose of proving the tax assessed and laid for the year 1884, the plaintiff offered the list for that year made out by the assessors as follows:

" Taxable list of Julia Champion of Hartford for 1884:

Insurance stocks   .   .   .   .   .   .   $81,763.

30 per cent additional for neglecting to make

   out sworn list .   .   .   .   .   .   $24,528."

To this the defendant objected, because the insurance stocks named in the list were not itemized so as to indicate the various companies in which they were held, and because the statute authorizing the addition of thirty per cent was repealed.   The court overruled the objections and admitted the list.

The ground of the first objection is fully removed by the ruling of the court in the case of *City of Hartford* v. *Champion,* 54 Conn., 436.   The assessors performed their duty

and made the addition prior to the 31st day of December, 1884.  At that time the addition was lawful.  The repealing statute invoked by the defendant was not passed until March, 1885, and did not take effect till the first day of July of that year.  It had no retroactive effect.  There was no error in the ruling.

The main contention before the jury was, whether or not the defendant, on the first day of October in the years 1882, 1883, 1884 and 1885, resided in the city of Hartford, so as to be liable to pay taxes there.  The defendant claimed that in the spring of 1882 she removed from Hartford with the intention of not returning to reside there, and took up her residence in the city of Springfield, Massachusetts, where she continued to reside in boarding houses until the spring of 1883, when she removed to Suffield, Connecticut, where she has ever since resided.  It appeared in the evidence that the defendant had passed some portions of her time during these years in Springfield and in Suffield, and that she had bought a house in the latter town.  The plaintiff claimed that these absences from Hartford were not had with a *bonâ fide* intention on the part of the defendant to change her residence; but that whatever absences from Hartford on her part were proved, were merely temporary absences, arranged for the purpose of creating the appearance of a residence elsewhere which did not in fact exist, and giving color to her claim that she had ceased to reside in Hartford.  Many witnesses were examined by both sides as to the fact of these absences, the circumstances attending them, and the length of her stay; and also as to the length of her abiding in Hartford and the circumstances of it, the character of her residence there, and generally as to her habits and mode of life and her family relations and connections.

Among other witnesses the defendant called Mrs. Porter King, who testified that the defendant had lived at her house in Springfield just the same as the rest of her, (the witness's,) family.  On cross-examination counsel for the plaintiff asked this witness if she knew where the defend-

ant got her meals while she was staying at the witness's house, and if she did not sometimes get her dinners at the depot restaurant. To these inquiries the defendant's counsel objected, but the court overruled the objection and admitted them. We think these questions clearly admissible. It certainly was proper to find out what the witness meant when she stated that the defendant had lived at her house just the same as the rest of her family. The defendant claimed to be residing in Springfield, making it her home there at the boarding house of Mrs. King. The fact of getting dinners or other meals at the depot restaurant would, if proved, have a very significant bearing on the correctness of that claim. A person temporarily in Springfield would be very likely to get a meal at the depot restaurant, while a person residing there and having a home at a boarding house would not be likely to do so.

In her own testimony in chief the defendant exhibited and testified concerning certain receipts for her board and room while she was in Springfield. On cross-examination she was asked:—" Will you tell me why the amounts that were paid do not appear in any of these receipts?" and various other questions of like nature; to all of which counsel for the defendant objected, but the court admitted them. There was no error in this. The plaintiff claimed that these receipts had been prepared by the defendant to make it appear that she had boarded in Springfield much longer than was the real fact. They had the right to show this if they could.

The defendant, in connection with her testimony in chief, introduced notices which she had received while in Springfield from certain insurance companies in Hartford, to the effect that a non-resident tax had been deducted before transmitting to her the dividends on her stocks. She was asked on cross-examination if she had not received similar notices from Massachusetts companies. She answered that she did not think she ever had. The defendant's counsel objected to this question for the reason that it assumed a fact which had not been proved; that is, that the law in Massa-

chusetts in this respect was like the law of Connecticut. The court admitted the question. We are not able to see how the defendant was harmed by this question in any aspect of it. If the law of Massachusetts is the same as the law of Connecticut, then the fact that she had received no such notice from Massachusetts corporations would tend to support her claim that she resided in that state. If the law in that state is different from ours, as the defendant claims, then, as she answered that she had not received any such notice, she was not harmed. There was no fact from which any such inference could be made either way.

Nelson King, a witness in behalf of the defendant, testified as to her residence in Suffield, and as to how often and under what circumstances he had seen her there. He was asked on cross-examination respecting a Mr. Burbank, who lived in the house next to the one owned by the defendant. We think these questions were proper to test the memory of the witness, and to test his habits of observation as well as his accuracy.

During the trial counsel for the defendant presented to the court two series of requests for instructions to the jury. These, while not precisely alike, cover the same ground. The court apparently regarded them as interchangeable. In his charge the judge read to the jury the first request of the first series, and instructed them that it was the law. In respect to the other he said : " I think in looking over these requests and comparing them with what I have intended to say to the jury, that it is not necessary for me to read them, as I have said, not so much questioning the law as because I believe I have covered the subjects embraced in them already." The court did not specifically refer to the second series of requests at all. In her reasons of appeal the defendant says : " The court erred in not charging the jury as requested by the defendant as follows : " and then recites the second series of requests at length, six in number. Another reason of appeal is " that the court erred in charging as follows : " and then recites two printed pages from the charge, taken not consecutively but from different parts of

it. The plaintiff's counsel strenuously urge that these reasons of appeal ought not to be considered by this court for the reason that they are not within the rule which requires that a special assignment of each particular error shall be made. Whatever force there is in this claim, and there is certainly some, we have not thought it sufficient to require us to disregard these reasons of appeal. In their brief the defendant's counsel substantially bring these two assignments together and point out the particular error of which they complain to be, that from the omission to charge as requested and from the charge actually given the jury were led to understand that the defendant would continue to be a resident in Hartford till she had established such a *permanent home*, either in Springfield or Suffield, as excluded the possibility of a future change.

The general question for the jury was, whether or not the defendant had changed her domicil from Hartford to Springfield or to Suffield. She claimed to have removed from Hartford to Springfield in the spring of 1882, to have lived there about a year, and then to have removed to Suffield, where she had ever since resided. It was admitted that she had passed some portion of the time during each of these years in Springfield and in Suffield; so that the general question of domicil was narrowed to one of intent. With what intent did the defendant go from Hartford to Springfield and remain there for such time as she did? Was it with such an intent as would effect a change of her domicil from Hartford? The case turned upon the answer that the jury should give to the question. Many witnesses were examined. The plaintiff on the one hand claimed to have proved that the defendant went to Springfield and to Suffield without any real *bonâ fide* intent to change her residence at all; that she was in those places for temporary purposes merely, and not for the purpose of making her domicil there, but with the intent on her part all the time to return to Hartford. On the other hand the defendant claimed to have proved that she did intend to remove from Hartford, and

did intend to make her domicil in Springfield and in Suffield, and that she did not intend to return to Hartford.

It is confessedly difficult to define domicil. In this case it is not necessary to attempt it. Prof. Wharton says, (Conflict of Laws, § 21:) "Domicil is a residence acquired as a final home. To constitute it there must be—(1) residence, actual or inchoate; (2) the non-existence of any intention to make a domicil elsewhere." This is a sufficiently accurate definition for the purposes of this case. It corresponds essentially with the definition given by other writers, and in numerous decisions of this and other courts. Judge STORY, (Conflict of Laws, § 41,) says: "Two things then must concur to constitute domicil; first, residence, and secondly, the intention of making it the home of the party.* * * It is the fact coupled with the intention of remaining there." In *Salem* v. *Lyme*, 29 Conn., 79, Judge HINMAN in the opinion says: "But domicil is but the established, fixed, permanent, and may therefore be said to be the ordinary, dwelling place or place of residence of a party, as distinguished from his temporary and transient though actual place of residence." And on page 80, he adds: "When a domicil is once acquired by a residence for an indefinite time, with an intention to continue the residence indefinitely, the statute applies." *Easterly* v. *Goodwin*, 35 Conn., 286; *First Nat. Bank* v. *Barlow*, id., 357; *Clinton* v. *Westbrook*, 38 id., 12; *Thayer* v. *Boston*, 124 Mass., 145. See also Jacob's Law of Domicil, §§ 72, 150, 151, 159, where a great many cases are cited. Also *Haldane* v. *Eckford*, L. R., 8 Equity, 631; *Brunel* v. *Brunel*, 12 id., 298; *Douglas* v. *Douglas*, id., 617.

When once it is ascertained what is necessary to constitute one's domicil in any place, it is easy to point out what must be done in order to effect a change of that person's domicil to another place. All the conditions which are required to constitute the domicil in the given place must be transferred to the new place. When this is done the domicil is changed; and until this is done the domicil is not changed. The old one is not abandoned, the new one is not acquired. This, of course, excludes the existence of an intention to return to

the former place ; for the existence of an intention to return is inconsistent with the idea that the former home is abandoned. *Clinton* v. *Westbrook,* 38 Conn., 12 ; *Sears* v. *Boston,* 1 Met., 250 ; *Greene* v. *Windham,* 13 Maine, 225 ; *Wilbraham* v. *Ludlow,* 99 Mass., 578. It was essential to the defendant's case that she should prove a residence in Springfield or in Suffield so permanent as to exclude the existence of an intention to make a domicil elsewhere, and so permanent as to exclude an existing intention to return to Hartford. If she had not done this she had not shown any domicil in either of those towns. If she had not done this she had not shown any abandonment of her domicil in Hartford, and her stay in Springfield or in Suffield was but a mere temporary sojourn there, and not a domicil at all.

In every case it is the duty of the court to give the jury such instructions as are correct in law, as are adapted to the issue, and as are sufficient for their guidance in the case before them. If this is done it is immaterial that the instructions asked for are not given. In the present case, upon the evidence and the claims of the parties, it was incumbent on the trial judge to instruct the jury as to what constituted domicil ; what it was when contrasted with a temporary place of abode ; what it was necessary for the defendant to prove in order to show an abandonment by her of her old domicil in Hartford ; and what to show that she had acquired a new one in Springfield or in Suffield. Upon a careful reading of the whole charge we think this was done fairly, fully, and according to law.

Portions of the charge are complained of by the defendant for the reason, as she says, that the jury were led therefrom to believe that a domicil could not be acquired by her in Springfield or in Suffield unless she showed that she had no intention of ever removing from the place. We think this objection is without foundation. The language used was applicable to the conflicting claims made in the case ; on the one side a residence claimed to be permanent enough to be a domicil, and on the other side a residence said to be so temporary as not to constitute one. It was the duty of the

court to point out the distinction between these claims; and we see nothing in what was said in the portions objected to, when read in connection with the whole charge, calculated to mislead the jury.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.