THE TOWN OF MADISON *vs.* THE TOWN OF GUILFORD.

Third Judicial District, Bridgeport, October Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

In an action to recover for supplies furnished to one *S*, an alleged pauper of inferior mental capacity, whose settlement prior to April, 1904, was admittedly in the defendant town, the parties were at issue to the jury as to whether *S* had "resided" in the plaintiff town four years continuously at any time between April, 1904, and January, 1911, and if so, whether he had maintained himself during such continuous residence without becoming chargeable to that town. The plaintiff's evidence tended to show that, save for three absences of a few months each, during the nearly seven years that *S* was in Madison he drifted about from place to place, slept in unoccupied houses, huts, barns and outbuildings, did odd jobs of work from time to time, and subsisted in part upon charity, although for a time during one of those years he lived in the family of his brother. Upon an appeal by the defendant it was *held:*—

1. That the word "resided," as used in General Statutes, § 2469, relating to the acquisition of a settlement by an inhabitant of one town in another, meant a fixed, permanent and established residence, as distinguished from one which was merely transient and temporary.

2. That in determining whether *S* resided, within the meaning of the statute, in Madison for the requisite period, the jury were correctly instructed to take into consideration, with all the other facts and circumstances in evidence, the manner and mode of his life there, where and with whom he lived, the various places in which he slept, the way in which he obtained his sustenance and his clothes, the work he performed, what personal effects, if any, he had, and what he did with them.

3. That the trial court properly instructed the jury that they might take into consideration the mental capacity of *S*, in connection with the other pertinent circumstances, in determining whether or not he had resided in Madison in such manner as to gain a settlement therein.

4. That in the absence of any request by the defendant to charge that the manner and mode of life of *S* in Madison was sufficient to constitute "residence" within the meaning of the statute, and of any assignment of error to the effect that the charge, for the want of such instruction, was not adapted to the issue or sufficient for the guidance of the jury, the defendant was precluded in this court from criticising the charge as inadequate in this respect.

The defendant contended that *S* was not a proper subject of assistance by the plaintiff, as he had funds available for his support in the hands of a trustee; and that the instruction of the court on this subject, while unobjectionable in itself, practically withdrew from the jury's consideration the same claim in its bearing upon an issue stated later in the charge. *Held* that this criticism was too precise and exacting, especially in view of the subsequent instructions of the court, which were as favorable to the defendant as it could well ask.

The defendant having made *S* its own witness as to a certain line of inquiry, asked him if he had not always made Madison his home since his father's death, and on objection the question was excluded. *Held* that aside from its leading character, especially when addressed to a witness of limited mentality such as *S* was, the question was not only vague and uncertain in its import but was objectionable as calling for a legal conclusion upon a matter involving other considerations than mere intent; and that inasmuch as an affirmative answer from such a witness could not in reason have had any appreciable weight, the exclusion of the question, even if erroneous, could not have harmed the defendant.

Upon the plaintiff's objection the trial court excluded a sentence in a letter of *S* to his father's executor, accompanying a claim presented against the estate, to the effect that *S* did not want the executor to save the house or any land for him. *Held* that the inference sought to be drawn therefrom, that *S* had then decided to give up his domicil in Guilford and establish it elsewhere, was so remote and unsubstantial that the defendant could not have been harmed by the ruling excluding the letter.

While applying for and obtaining work and food in East Haven, *S* stated that he had no place to which he could go. *Held* that such statement was admissible as bearing upon the question of his having a place of residence.

A person's intent is a recognized factor in the determination of the question of acquired domicil, and his own testimony as to that is admissible, including his intent as to the future.

One's "home" and one's "domicil" are not always and necessarily in the same place.

A change of domicil is a question of "act" and "intent."

Argued October 25th—decided December 19th, 1911.

ACTION to recover the cost of supplies furnished to one who was alleged to be a pauper and to belong to the defendant town, brought by the defendant's appeal from a judgment of a justice of the peace to the Court of Common Pleas in New Haven County and tried to

the jury before *Wolfe, J.;* verdict and judgment for the plaintiff, and appeal by the defendant. *No error.*

*William B. Stoddard* and *Robert C. Stoddard*, for the appellant (defendant).

*Edmund Zacher*, for the appellee (plaintiff).

PRENTICE, J.    Charles A. Spencer had his legal settlement in the defendant town of Guilford at the time of the death, in September, 1903, of his father, with whom he had always lived. He was then twenty-five years of age, and of inferior mental powers. He continued to live on his late father's farm in Guilford until it was sold, April 5th, 1904, and a few days thereafter. At this time he took his few belongings and went into the plaintiff town of Madison, where he thereafter remained continuously until after January 14th, 1911, save for three absences each of a few months duration. On December 3d, 1910, the selectmen of Madison furnished him with aid as a person requiring such aid from them under the law regulating the support of the poor, and on that day gave to the defendant, as the town chargeable with his support, the notice prescribed in § 2485 of the General Statutes. December 10th, 1910, they rendered to the defendant a bill for the expense thus incurred. Between December 9th, 1910, and January 14th, 1911, further aid was similarly furnished, and a bill therefor presented on January 14th, 1911. Payment of these amounts not having been made, this action was brought to recover them.

Prior to the times mentioned, the Madison selectmen had furnished help for the support of Spencer, by the payment of a weekly sum, from July 10th, 1909, to March 1st, 1910. The amounts thus expended were repaid to the town of Madison by the selectmen of

Guilford upon notice and presentation of bill. The defendant by its counterclaim seeks to recover back the amount of these payments. The facts thus far stated are uncontroverted.

The issues joined called for the determination by the jury of two principal questions, to wit: first, was Spencer, at the time when the aid was furnished him, entitled to it at the hands of the selectmen of Madison; and second, was the defendant chargeable with the expenses thus incurred, as being the town of Spencer's legal settlement.

No complaint is made of the conduct of the cause as bearing upon the former of these issues. The latter, under the claims of the defendant and the conceded facts, involved two subordinate issues. One was whether or not Spencer had resided, within the meaning of the statute, General Statutes, § 2469, four years continuously in Madison between about April 8th, 1904, and July 10th, 1909; the other, whether or not he, having no family, had, while thus residing, maintained himself during the whole of such continuous period without becoming chargeable to the town. Under the evidence presented the latter question became resolved into an inquiry as to whether help unquestionably given upon one occasion in January, 1906, to his brother and family, with whom he was then boarding, was, under the circumstances, help given to him. The date upon which this assistance was rendered was such that if it was to be regarded as rendered to Charles Spencer, that incident would necessarily defeat the defendant's claim that he had gained a settlement in the plaintiff town, with the inevitable result that his settlement in Guilford had not been lost.

The assignments of error pursued before us, aside from those growing out of the introduction of testimony, while stated in several paragraphs, all gather about

two matters. One of these relates to the first subordinate issue just referred to as to residence, and the other to the second of such issues as to the effect, under the circumstances, upon Charles Spencer's status of the assistance furnished to his brother Fred and family in January, 1906, as related.

The reasons of appeal which are pertinent to the former of these issues are, adopting the enumeration of the defendant's counsel, five in number. The first in order is the court's failure to charge as requested in a specified request identified by number. Reference to the request so numbered discloses that it does not deal at all with the subject in question, and we fail to find any other one which does in any way. Evidently this was included by inadvertence. The remaining four are concerned with the charge as made, and take exceptions to recited portions.

Before passing to a consideration of these criticised passages we ought to prepare the way by calling attention to the general situation with which the jury was called upon to deal. The plaintiff claimed to have shown that Spencer's life in Madison was passed in drifting about from place to place, sleeping in unoccupied houses, huts, barns and outbuildings, in doing from time to time such odd jobs as he was fitted to do, and in subsisting in part upon what he bought and in part upon what was given him in charity by those who took pity on him. The only period when the evidence of either party disclosed that he lived with any one or in a house otherwise occupied than by himself, or otherwise furnished than with his few personal belongings, was one in 1906 when he lived in the family of his brother Fred.

The first exception is taken to the court's definition of the word "resided" as used in the statute. Its statement was that "by 'resided' is meant a fixed, per-

manent and established residence, as distinguished from a residence which is merely transient or temporary." This is the precise declaration of this court, and must be true, if the statute is to have a reasonable operation. *Salem* v. *Lyme*, 29 Conn. 74, 81; *Hartford* v. *Champion*, 58 Conn. 268, 275, 20 Atl. 471; *Fairfield* v. *Easton*, 73 Conn. 735, 738, 49 Atl. 200.

The second passage complained of is in effect but a restatement of this same principle through the application made of it to the facts of the case. In it the court told the jury that if it should find that Spencer's stay in Madison "was merely of a transient or temporary nature and that he had no fixed or established residence or place of abode in Madison," such a finding would be decisive of the case in favor of the plaintiff. This instruction was, under the admitted circumstances attending Spencer's case, clearly correct.

In the next passage objected to the jury was told that in determining whether Spencer had resided in Madison within the meaning of the statute, they should take into consideration all of the facts and circumstances presented in evidence, "including the manner in which it has been shown Spencer lived while in Madison, both in respect to with whom he lived, the various places in which he slept, the way in which he obtained his sustenance and his clothes, and the work that he performed, and also whether he had any personal effects, and if so, what they were and where he left them and what he did with them." Here, again, no part of the statement of the court is open to dispute. It embodies observations for the guidance of the jury which were both true and pertinent and which could not with propriety have been omitted in view of the peculiar features the case presented.

The court in this connection also instructed the jury that while the fact that the person removing from one

town to another in this State is of inferior mental capacity will not prevent his acquisition of a legal settlement in the town to which he goes, provided he otherwise satisfies the provisions of the statute, they might take into consideration such condition of mind upon the part of Spencer as a matter of evidence, together with the manner in which he lived in Madison and such other facts and circumstances in the case, for the purpose of determining whether or not he resided in that town in such manner as to gain a settlement therein. We are unable to discover an error here. In *Plymouth* v. *Waterbury*, 31 Conn. 515, 516, which held that a person *non compos mentis* might gain a new settlement by commorancy, it was intimated that it might be true that stronger evidence of a change of domicil might be required in the case of such a person than in the case of other persons. But the passage under criticism does not assert that proposition. It simply asserts that an existing condition of inferior mentality is a circumstance which, if it exists, may properly be considered in connection with the other pertinent circumstances in determining the ultimate fact of change of domicil. A change of domicil is a question of "act" and "intention." Jacobs on Domicil, § 125; *Clinton* v. *Westbrook*, 38 Conn. 9, 12; *Yale* v. *West Middle School District*, 59 Conn. 489, 491, 22 Atl. 295. In determining these questions a great variety of facts and circumstances may be pertinent, and it may be necessary "to make a minute inquiry into the habits, character, pursuits, social and domestic relations, and indeed the whole history of the person from his youth up." 10 Amer. & Eng. Ency. of Law (2d Ed.) 20. Surely mental incapacity is not a fact to be ignored when the acts of the individual are being interpreted and a valuation put upon them, or when intent is to be discovered therefrom.

Defendant's counsel introduce their discussion of this general subject of error touching the matter of residence, with the statement that the important question which it was desired to raise was "whether the court was correct in ruling that a person who was living as the finding shows that Spencer was living in Madison, that is, in outhouses and barns, doing his own cooking, boarding with his brother, living in the workman's houses of his employers, etc., could not gain a legal settlement in Madison." We are unable to discover any ruling or instruction to that effect. Their consideration of this subject is concluded with the proposition that "the court should have stated that a person living as Spencer was admittedly living could acquire a settlement under the statute if he complied with the other requirements of the law."

These extracts from the brief, as well as the general tenor of its discussion of this group of assignments of error, indicate that counsel's real complaint is not to be found in what the court charged, but in what it did not charge. The real criticism is that the court stopped where it did, and did not go further and give additional instructions immediately directed to a situation such as Spencer's life in Madison presented, and such instructions as would practically compel the jury to find that the circumstances of that life and manner of it were such as to constitute residence within the meaning of the statute, or at least make it easy for them to so find. But the defendant made no request that the court charge in the manner indicated, or at all as bearing upon the manner of Spencer's life, and there is no assignment of error to the effect that the charge, for the want of such instruction, was not adapted to the issues, or sufficient for the guidance of the jury in the case before it. *Hartford* v. *Champion*, 58 Conn. 268, 276, 20 Atl. 471. We have no occasion, therefore, to consider how

far the law goes, if at all, in permitting a residence for the purposes of the pauper statutes to be acquired through a kind of life within a town such as Spencer's confessedly was, or such as the jury, upon the plaintiff's testimony, which went to the verge of characterizing him as at times a vagrant, might have found it to have been.

It appeared in evidence that upon the settlement of the estate of Spencer's father the sum of $117.73 remained in the hands of the executor in trust for the son. Evidence was offered to show the state of this fund until the trust was finally closed, August 16th, 1910, and the trustee's account filed showing that the fund had been expended.

The court in its instructions upon the issue as to whether or not Spencer at the several times between July 12th, 1909, and January 14th, 1911, when assistance was provided for him by the plaintiff, was a person entitled to receive such assistance, told the jury that, as bearing upon it, they should take into consideration the defendant's claims that Spencer had funds in the hands of the trustee, which could have been obtained for his support, if necessary, and that there was an outstanding order given by this trustee upon which Spencer could have obtained certain necessaries. It was added that these matters were only to be considered, so far as the plaintiff's demand under the complaint was concerned, with reference to the existence of the facts claimed at the times when the aid, for which recovery was sought, was furnished, in December, 1910, and January, 1911, and so far as the defendant's claim under its counterclaim was concerned as related to the times when the aid in question was provided.

The defendant does not complain, and could not well complain, of this statement as related to the subject under discussion; but it urges that the effect of the

language here used was to withdraw from the consideration of the jury the matters referred to in their bearing upon the issue, later discussed by the court, as to whether or not the help given to Frederick Spencer and his family in January, 1906, was to be regarded as help furnished to Charles.

This is a charge, founded upon a too exacting and precise criticism, which loses whatever force it would otherwise have, by reason of the fact that the court in its instructions upon this latter issue told the jury that if they should find that Charles did not receive any of the benefit of such assistance, or, if they should find that he personally was not legally entitled to receive support because he had means of his own at that time that were available for his support, and such that he was not entitled to aid from the town, then it could not be said that he became at such time an actual expense to the town, and the aid furnished his brother under the circumstances would not prevent Charles from gaining a legal settlement in Madison. This was, to say the least, a strong statement in favor of the defendant, and in view of it, it is difficult to imagine that the jurymen could have derived from the charge the notion that Charles' possession of available financial resources sufficient for his reasonable maintenance through the trust created by his father, would be a matter immaterial and not to be considered as bearing upon the question whether he was to be regarded as a recipient of assistance from the town through the medium of that which was furnished to his brother.

The plaintiff offered Spencer as a witness, and inquired of him as to the town of his birth, the residence of his father in that town, his removal therefrom to Guilford with his father when sixteen years of age, his residence in the latter town with his father until the latter's death in September, 1903, when the son was

about twenty-five years old, and his thereafter remaining upon his late father's farm until its sale in April, 1904. Upon cross-examination he was asked, with regard to the period since his father's death, if he had not gone back to Madison whenever he went away to work and had finished. The answer being in the affirmative, counsel next inquired: "and have always made Madison your home since that time, haven't you?" Upon objection this question was excluded. Complaint is made of this ruling.

One's intent attending a change of place of abode from that of the then domicil, or continuance in such changed place of abode, is a recognized factor, and an important one, in the determination of the question of acquired domicil. Such being the case, evidence to establish it is necessarily relevant, and the testimony of the party himself is admissible. 3 Wigm. on Ev. §§ 1727, 1784; Jacobs on Domicil, § 467. In the present case the question did not directly call for Spencer's testimony as to his intent, as it should have done, if it was desired to obtain from him an expression upon this point. It touched that subject only as an intent to make a place of abode that of domicil is involved in the legal conception of "home". It is doubtless true that "home" is the fundamental idea of domicil. But it is also true that the "home" and "domicil" do not always correspond. "The conception of domicil, being a creation of the law, contains within it certain legal fictions established for the purpose of giving greater precision and certainty in the application of various rules of law. But these fictions are not recognized as belonging to the ordinary conception of home, and consequently a person's domicil and home may be in different places." Jacobs on Domicil, § 71. The question propounded to the witness, in so far as it related to the matter of Spencer's intent attending his abiding in Madison, was

thus, from the standpoint of the law, one which was objectionable as calling for a legal conclusion upon a matter involving other considerations than intent. It was also objectionable as being vague and uncertain in its purport when addressed to the average witness not skilled in the law, not to say one of inferior mental capacity. When so addressed, it was easily susceptible of a misunderstanding of its scope, and might readily elicit an answer which might be misused. Furthermore, the question was decidedly objectionable by reason of its leading character, and especially when put to a witness of limited mentality, such as Spencer was. For the purposes of the line of inquiry counsel was pursuing he had made the witness his own, and was not entitled to the privileges of cross-examination. An affirmative answer elicited from such a witness by such a question could not in reason have weighed appreciably in a consideration of the testimony. The court was within its rights in excluding the question, and its ruling, even if erroneous, could not have harmed the defendant.

The court, upon the plaintiff's objection, excluded a letter written by Spencer to the executor of his father's estate about two weeks before the sale of the farm, in which he presented a claim against the estate, and in conclusion used the following sentence, to wit: "I do not want you to save any land or the house for me at all." As bearing upon the matter of domicil, not only is evidence of intent concurring with or attending acts admissible, but evidence of an intent as to the future will also be received. 3 Wigm. on Ev. §§ 1727, 1784; *Viles* v. *Waltham,* 157 Mass. 542, 32 N. E. 901. Any inference, however, which could be fairly drawn from this excluded letter of the witness, to the effect that the writer had formed the purpose of no longer living in Guilford, not to say giving up his domicil there, and establishing it in Madison or elsewhere, is so remote

and unsubstantial that no harm could have come to the defendant from the ruling.

Certain rulings permitted the plaintiff to show the manner of Spencer's life while in Madison, his habitations, mode of living and means of sustenance. These were clearly correct.

Evidence that Spencer, going to the home of a Mrs. Keach in East Haven in April, 1908, seeking food and work, which he obtained, and remaining there a little more than two months, said to Mrs. Keach upon his arrival that he had no place to which to go, was manifestly admissible as bearing upon the question of his having a place of residence.

The remaining ruling objected to was a wholly immaterial one.

There is no error.

In this opinion the other judges concurred.