BYRON WILBUR *v.* TOWN OF CALAIS.

May Term, 1916.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed October 10, 1916.

*Transient Person—Support—Domicile—Intention—Declarations*
*—Harmless Error—Confinement in Asylum.*

One who is a visitor in the usual sense is a transient person, and not
a person who has come to reside.

The acquirement of a new domicile involves a change of residence,
with an intention to make the new location a permanent home;
and this intention is often the controlling fact in determining an
inquiry as to domicile.

A postcard, written and mailed from California, saying that the writer
was about to leave for Vermont and would arrive there in six or
seven days, throws no light upon the question of the writer's
intention as to the length of his stay in Vermont, but, when ad-
mitted in evidence upon this point, *held*, harmless error.

Declarations of intention, not made in connection with the doing of
any act are received in evidence in cases of domicile, on the
ground that intention as to residence is an independent fact, in
itself material to the issue and provable as such.

The declarations of one that he intended to return to California; that
he would not stay in Vermont for the whole state; that he wished
the plaintiff to sell out and go with him; and that he intended
to go as soon as he heard from his niece, with whom he was
corresponding; not being made with reference to his own interest,
nor offered in support thereof, are admissible in evidence upon
the question of whether the declarant was a transient person,
under the provisions of P. S. 3670.

In order to recover against a town for the support of a transient
person, who is in need of assistance, under P. S. 3670, it is not
necessary for the person at whose house he is confined actually to
deliver him to the overseer of the poor.

One in whose house a transient person becomes violently and danger-
ously insane may provide for his temporary custody and care in
an asylum, and thereby secure the safety of his family and the

public, without losing his right to recover from the town for a reasonable outlay incurred thereby, after having given the notice required by P. S. 3670.

ACTION under P. S. 3670 to recover the expense of supporting one Virgil B. Webster, an alleged transient person. Plea, the general issue. Trial by the city court of the City of Barre, *Scott,* City Judge. Judgment for the plaintiff. The defendant excepted.

It appeared that Webster came from California to the plaintiff's house in Calais, and while there was seized with a serious illness which developed into insanity. When he became unmanageable, so as to endanger the lives and property of those about him, the plaintiff procured his commitment to the State hospital for the insane at Waterbury, under an obligation to pay for his board and care. A few days after the commitment, the plaintiff notified the overseer of the poor of the town of Calais that he would look to the town for the future care and support of Webster.

Shortly before Webster arrived in Calais, the plaintiff's wife received a postcard in Webster's handwriting, postmarked Los Angeles, California, as follows:—"Los Angeles, Aug. 4, 1914, Dear Gertie: I shall leave tomorrow night for Vermont. I suppose it will take six days and possibly seven to get there. Affectionately yours, Virgil B. Webster." This post card was admitted in evidence, subject to defendant's exception.

The plaintiff testified that Webster had stated to him that it was his intention to return to California; that he would not stay in Vermont for the whole state; that he wished the plaintiff to sell out and return with him; and that he intended to leave as soon as he heard from his niece in Philadelphia, with whom he was corresponding. This evidence was admitted, subject to exception by defendant, "to elucidate and explain the presence of Webster at the plaintiff's house."

The court found that Webster was a poor person in need of assistance and was a transient person in the town of Calais, but stated that the latter finding was based largely upon the evidence of his declarations and the postcard above described, and that if this evidence had not been admitted, the finding would not have been made. There was also evidence that

Webster had partially packed his baggage and prepared his clothes for the journey, at the time he was taken ill.

*H. C. Shurtleff*, for the defendant.

*Theriault & Hunt* for the plaintiff.

MUNSON, C. J.  The plaintiff seeks to recover for expenses incurred in the support of one Webster, an uncle of his wife, under circumstances detailed in findings of fact made by the trial court.

From about the middle of August, 1914, until the first day of March, 1915, Webster lived at the plaintiff's home in Calais, except as he visited at other places in the vicinity for short periods.  In the fall of 1914, while at the plaintiff's home, he became seriously ill with a hemorrhage, and remained ill for some weeks.  When recovering from this illness he showed symptoms of insanity, and in February, while still at the plaintiff's house, he became unmanageable and dangerous.  Plaintiff thereupon procured his commitment to the State hospital under an obligation to pay for his board and care, and notified defendant's overseer of the commitment, and that he should look to the defendant for Webster's future support.  The claim is for the amount paid by the plaintiff from the date of this notice until Webster's subsequent commitment as a State charge.

The court states in different parts of its report, and in the following order, that Webster was at the plaintiff's for the purpose of making a visit; that he was a poor person in need of assistance, and a transient person in defendant town; that there was evidence, independent of his declarations received under exception, that his presence in Calais during all of this time was that of a visitor; that it could not have found that he was a transient person without considering the declarations.  If the finding first above stated could be construed as characterizing Webster's entire stay in Calais, and be considered without reference to the further statements, it might be taken as a disposition of the determinative question, not dependent upon the admissibility of the evidence objected to; for one who is a visitor in the usual sense is a transient person, and not a person who has come to reside.  But the statement that there was independent evidence of his continuance as a visitor without a dis-

22

tinct finding of the fact, and the further statement that the court could not find that he was a transient person without using the declarations, show that the court did not treat the two words as having the same or equivalent meanings. So it will be necessary to inquire as to the admissibility of the evidence received under exception.

The evidence which the court states to have been largely the basis of its finding that Webster was a transient person, consists of a postcard mailed at Los Angeles, California, on which Webster informed the plaintiff's wife that he would leave for Vermont the following day; and Webster's statements, testified to by the plaintiff as having been made in certain conversations, that it was his intention to go back to California; that he would not stay here for the whole state; that he would like to have the plaintiff sell out and go back to California with him; that he was corresponding with his niece in Philadelphia, and that as soon as he heard from her he should take steps to leave. Independent of Webster's declarations, there was evidence that he made preparations to leave; that he got extra clothes and had those he had worn cleaned, and had his suit case partially packed when he was taken sick. There was also evidence that the plaintiff had personal knowledge of Webster's correspondence with his niece, and of her sending him a check for $25.

The acquirement of a new domicile involves a change of residence, with an intention to make the new location a permanent home; and this intention is often the controlling fact in determining an inquiry as to domicile. The doer of an act equivocal in its nature is ordinarily permitted to testify as to his intention in doing it; and in many cases declarations of intention made by the person doing the act may be shown in evidence. The declarations of one making a change of abode, if they meet certain requirements, are received as evidence of his intention in doing so; for the change may be a temporary arrangement having no legal effect, or may be the acquirement of a new domicile. The admissibility of Webster's declarations depends upon their relation to his acts or conduct in coming to Calais and remaining there.

The postcard was evidence tending to show what Webster's intention as to leaving for Calais was at the time it was written, and this rendered it more probable that he went there as intended. *Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285, 36 L.

ed. 706, 12 Sup. Ct. 909. But there was no question as to his being in Calais, nor as to the time when he came. As to his purpose in coming, which was the important question, the card is entirely colorless. The only additional fact derivable from it was that he came from Los Angeles, California. The case finds that Webster was a poor person in need of assistance, and it was of no consequence to the inquiry regarding his status in Calais as affecting the town's primary liability, whether he came from California, or from some town in this State. So the card, if not admissible, was harmless.

There is nothing in the case that connects any oral declaration of Webster with a particular thing being done at the time. The declarations are to be considered as bearing upon the character of Webster's stay in the defendant town during an indefinite number of weeks, disconnected from any incident occurring during that period. The declarations cannot be held admissible under the doctrine of *res gestae* without treating Webster's stay during that period as one continuous act. There has been no general recognition of this ground as a basis for the admission of declarations of intention as the *res gestae* of an existing status, unless in cases of adverse possession. But declarations not made in connection with the doing of any act have been received in cases of domicile, on the ground that intention as to residence is an independent fact, in itself material to the issue, and provable as such. *Viles* v. *Waltham,* 157 Mass. 542, 32 N. E. 901, 34 Am. St. Rep. 311; *Chase* v. *Chase,* 66 N. H. 588, 29 Atl. 553; *Kreitz* v. *Behrensmeyer,* 125 Ill. 141, 17 N. E. 232, 8 Am. St. Rep. 349; *Madison* v. *Guilford,* 85 Conn. 55, 81 Atl. 1046; *In re Newcomb's Est.,* 192 N. Y. 238, 84 N. E. 950. Mr. Wigmore considers that the latter ground is the correct one. For his treatment of the subject see 3 Wig. Ev. §§1727, 1784, 1776, 1778. See also 4 Chamb. Ev. §2665.

In *Webb* v. *Richardson,* 42 Vt. 465, this subject was somewhat discussed in its relation to claims of adverse possession; and it was there held that the declarations of an occupant of land, made in assertion of his claim when not upon the land, could be shown the same as if made while he was on the land doing an act of possession. It was said that such declarations were admissible if put upon the ground of declarations constituting part of the *res gestae,* because the *res gestae* was not confined to a particular act of occupancy done upon the premises,

but was the continual possession which included the successive acts of occupancy.

In *Fullam* v. *Howe*, 62 Vt. 386, 20 Atl. 101, the issue was one of domicile, and the declarations in question were those made by the plaintiff in his own favor, not connected with any specific act material to the case; and they were held inadmissible on the ground that they were declarations made by a party in his own favor, and not within the exception which permits their use when explanatory of the character of some accompanying act.

The person whose declarations were admitted here was not a party to the suit, and the ground of the decision in *Fullam* v. *Howe* is wanting. The general rule which excludes the declarations of third persons is not applicable. This controversy, although foreign to the interests of the declarant, involves an inquiry as to his domiciliary status, and his domicile cannot be located without ascertaining his intention. Declarations made during his stay indicative of its character are the natural expressions of his intention, and may properly be received as evidence of it, if legitimately connected with their subject, and made in circumstances calculated to give them credit. The substance of Webster's statements, and the circumstances connected with them, preclude the idea of their having been made with reference to his own interest, and they were not offered in support of his interest. If not treated as a part of the *res gestae* of an existing status, their admission is justified by the broader rule above considered, and is not in conflict with the decision in *Fullam* v. *Howe*. Nor is there anything inconsistent with this position in *Londonderry* v. *Andover*, 28 Vt. 416; *Derby* v. *Salem*, 30 Vt. 722, or *Jericho* v. *Huntington*, 79 Vt. 329, 65 Atl. 104.

Taken by themselves, Webster's statements can hardly be said to throw much light on the disputed question. They might be taken to indicate the proposed ending of an unsatisfactory visit, or the abandonment of a previous intention to establish a residence. It is true, as suggested by defendant, that we know nothing about Webster's connection with California. But he came here to visit a relative, and brought with him a suit case. All the circumstances are consistent with the making of a visit, and disclose nothing indicative of a purpose to acquire a domicile. The evidence indicates that he was dependent upon his

relatives even for the means necessary to travel from one point to another. The trial court received the evidence of his declarations to elucidate and explain the character of his presence in the defendant town, and with their aid has found that he was a transient person there. The evidence was admissible and the finding is supported by the case submitted.

The statute provides that "if a transient person is suddenly taken sick or lame, or is otherwise disabled and confined in any house in a town, * * and is in need of relief, the person at whose house he is　* * shall be at the expense of relieving and supporting such person, until he represents his situation to the overseer of the poor of the town, * * after which the overseer of the town so notified shall provide for his support; and, if the overseer neglects to provide for such support, the person so supporting him may recover therefor, in an action * * against the town so notified." P. S. 3670. The defendant denies its liability on the ground that the only relief available to the plaintiff was to leave Webster in the hands of the overseer; and cites in support of its denial *Macoon* v. *Berlin*, 49 Vt. 15, where it is said that if a resident pauper quarters upon a private citizen and the overseer refuses to furnish the needed relief, the citizen must either turn the pauper out of doors, or carry and leave him on the hands and premises of the overseer. The scope of the decision in that case is stated with particularity in *Goodell* v. *Mt. Holly*, 51 Vt. 423. There is certainly nothing in the statute above recited, and we know of nothing in our reports, which indicates that an actual delivery to the overseer is a prerequisite to the right of recovery.

Nor is there any basis for the claim that the plaintiff has forfeited his right to recover by contracting for Webster's relief in an asylum instead of caring for him in his own house. If he had undertaken to keep Webster at his house, he could certainly have recovered for the medical attendance and extra assistance made necessary by his diseased mind and dangerous condition. We see no reason why he may not recover for the same attendance and protection furnished through the agencies of an asylum. The relief and support thus provided for are furnished by him as truly as if the service was rendered by his household. The law sanctions the temporary restraint in an asylum, without legal process, of one dangerously insane. *In re Allen*, 82 Vt. 365, 371, 73 Atl. 1078, 26 L. R. A. (N. S.) 232.

The propriety and advantages of adopting this method of relief and protection are obvious. The humane treatment of the insane person is to be considered, as well as the safety of others. We think one in whose house a transient person becomes violently and dangerously insane may provide for his temporary custody and care in an asylum, and thereby secure the safety of his family and the public, without losing his right to recover from the town for a reasonable outlay incurred there, after he has given the notice provided for by the statute. See *St. Johnsbury* v. *Waterford*, 15 Vt. 692.

We dispose of the case upon the ground on which it was tried below and has been argued here, without considering whether the judgment could be affirmed on a construction of P. S. 3670.

*Judgment affirmed.*