[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION IN LIMINE TO EXCLUDE OPINION TESTIMONY OF RALPH ELLIOT
In this case, plaintiff Pepe Hazard ("PH"), a law firm with its principal place of business in Hartford, Connecticut, has brought suit against three of its former partners, defendants Richard D. Jones, Timothy J. Boyce and Marc B. Friedman ("the individual defendants"), and their current law firm, defendant Dechert, Price Rhoads of Philadelphia, Pennsylvania ("Dechert"), to recover money damages in connection with the individual defendants' early 1996 departure from PH to establish a new Hartford office for Dechert. PH's claims against the defendants are as follows: breach of fiduciary duty (Count I) and breach of contract (Count II) against all of the individual defendants; fraud (Count III) and computer conversion (Count VI) against defendants Jones and Friedman; misappropriation of trade secrets (Counts VII and VIII) against defendants Jones and Dechert; and conspiracy to breach fiduciary duties and contractual obligations (Count IV), tortious interference with contractual rights (Count V), and tortious interference with business expectations (Count IX) against defendant Dechert. In support of its claims, PH has given notice of its intention to call Attorney Ralph Gregory Elliot, a partner in the Hartford office of Tyler, Cooper Alcorn and a respected authority in the fields of legal ethics and the law of lawyering, as an expert witness.
In broad outline, PH expects to elicit testimony from Attorney Elliot as to "the interplay of various principles of substantive law in the operation of medium and large size law firms, and the nature of the relationship of attorneys to their firm and their clients — a mixture of ethics, the law of lawyering and substantive law." Plaintiff's Memorandum In Opposition To Defendants' Motion In Limine As To Ralph Elliot ("Plaintiff's Memo."), p. 2. More particularly, PH expects to elicit expert opinions from Attorney Elliot that: the individual defendants committed, and Dechert aided and abetted them in committing, numerous specific violations of the Rules of Professional Conduct; and CT Page 11780 that, by so doing, the individual defendants breached, and Dechert aided and abetted them in breaching, their fiduciary duties to PH and its partners, as well as other duties owed to them under the law of lawyering. The "jurors," claims PH, "will clearly need assistance in understanding the interplay of the substantive, ethical and fiduciary issues of the present case which the judge's instructions could not readily provide." Id., p. 6. Attorney Elliot will assertedly provide them such assistance based on his
 general knowledge in the area of the Rules of Professional Conduct and the canon of law commonly known as the law of lawyering. That knowledge is informed by constant professional work representing lawyers and law firms, mediating disputes between them, and serving as an expert witness on issues of professional ethics and the law of lawyering, all of which requires constant attention to developments in the relevant law through reading of cases and materials, attendance at seminars and meetings, and communication.
Letter to Counsel (4/29/99), p. 3.
The defendants have now moved this Court in limine to exclude the proposed opinion testimony of Attorney Elliot on the ground that it "consists of nothing more than an inadmissible opinion about the status of the law, the legal standard he believes the jury should apply, and the result it should reach" in this case. Memorandum of Law In Support of Defendants' Motion In Limine To Exclude Opinion Testimony of Ralph Elliot ("Defendants' Memorandum"), pp. 1-2. The general rule in this State, claim the defendants, is that opinion testimony is inadmissible to prove either the status or requirements of domestic law or that those requirements have or have not been met in a particular case. The function of defining and describing the law, argue the defendants, is for the Court, while the function of applying the law to the facts belongs exclusively to the jury. Hence, they argue that the plaintiff's claimed need for expert testimony as to the interplay of various legal, fiduciary and ethical principles "reflects a fundamental misunderstanding of the purpose of expert testimony." Reply Memorandum of Law In Support of Defendants' Motion In Limine To Exclude Opinion Testimony of Ralph Elliot. ("Reply Memorandum"), pp. 2-3.
For the following reasons, the Court agrees with the defendants that their Motion In Limine must be GRANTED.
 I
CT Page 11781
It has long been the rule at common law that no witness, expert or otherwise, can testify to a legal opinion, either as to the status or requirements of domestic law or as to the way in which the law should be applied to the facts of a given case. Turner's Appeal, 72 Conn. 305, 31644 A. 310 (1899); Madison v. Guilford, 85 Conn. 55, 65-66, 81 A. 1046
(1911). The dual rationale for this rule, as the defendants have argued, is that such testimony unnecessarily invades both the province of the Court, which alone must decide the law of the case, and the province of the jury, which alone must decide the facts of the case by applying the law, as the Court has instructed on it, to the credible evidence presented at trial.
The Court presumably knows the law from its own experience, or can learn the law from its own research and the arguments of the lawyers who appear before it. As a result, the testimony of an expert on the law is typically unnecessary or superfluous.
Moreover, when the Court decides the law of the case, its decision must be binding on all trial participants, subject only to appellate review. To ensure that jurors honor this obligation, considerable time is typically spent during voir dire to determine that potential jurors are willing and able to follow the Court's instructions on the law. Any demonstrated unwillingness or inability to do so is the surest basis for a successful challenge for cause. Furthermore, once the jurors are selected, every effort is made to insulate them from those parts of the trial where the judge and the lawyers discuss the law, so that they are not confused by what they hear or tempted to make their own decisions on issues of law. Many legal arguments are presented only in writing, most oral arguments on the law are conducted outside the presence of the jury, and the parties are not permitted to engage in running debates with the Court, before the jury or otherwise, about decided points of law.
Finally, consistent with the taking of these steps to preserve the Court's exclusive power to decide and enforce the law of the case, the jurors are expressly instructed that they must decide the factual issues presented for their decision under the Court's binding instructions on the law, putting out of their minds any personal notions they might have as to what the law provides or should provide, and ignoring whatever any other trial participant may have said about the law that is inconsistent with the Court's instructions. It would be completely inconsistent with these instructions, and with the careful trial procedures implemented to ensure that they are followed, to permit expert witnesses to offer opinion testimony about legal issues. CT Page 11782
The presentation of expert testimony on a point of law would not only suggest to the jury that the matter is in controversy, but would highlight such controversy by inviting cross-examination on that point, as well as the presentation of conflicting views from opposing expert witnesses. If jurors were exposed to a battle of experts about the proper interpretation of governing law, they might confuse the experts' testimony with the Court's instructions or worse, reject or modify the rules set forth in those instructions based on its own reaction to the more persuasive expert testimony. It is not the jury's job to find the law; instead it must find the facts by applying the law, as the Court has instructed on it, to the credible evidence presented at trial. Excluding expert testimony on points of law significantly reduces the risk that the jurors will step outside their own role as fact finders by finding the law as well.
The prohibition against testifying as to the status or requirements of domestic law has long been strictly enforced in Connecticut. OrangeStreet Armory Assoc., Inc. v. New Haven, 17 Conn. App. 166, 173,551 A.2d 759 (1988) (noting that the sole exception to the rule excluding legal opinion testimony is for testimony concerning matters of foreign law). The commonlaw rule is now codified as Section 7-2 of the Connecticut Code of Evidence ("Code"), which expressly limits expert testimony as follows to matters of fact:
 Sec. 7-2. Testimony by Experts A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue.
The rule against testifying as to how the law should be applied to the facts of a given case is described in our case law as the "ultimate issue rule." The concern of the rule is similar to that of the express prohibition on the offering of legal conclusions. That is, what is sought to be eliminated is an implicit interpretation of a disputed point of law under the guise of an opinion as to how an ultimate fact should be found. If a statute or a rule establishes a requirement of proof, testimony that the defendant has violated that requirement necessarily involves expression of an opinion as to what the law requires or forbids. Such testimony is inadmissible under the ultimate issue rule. Where, by contrast, the law has established that a rule is indeed violated by particular conduct, and a witness is qualified to offer expert opinion that the defendant has engaged in such conduct, he may so CT Page 11783 testify as long as he does not simply opine that the defendant has violated the law. The former is an opinion on the requirements of law, whereas the latter is an opinion on a matter of fact which the law makes relevant to a particular claim or cause of action.
The ultimate issue rule has been abandoned in our federal courts under the Federal Rules of Evidence. In Connecticut, however, the rule has is now codified as follows in Section 7-3 of the Code:
Sec. 7-3. Opinion on Ultimate Issue
 (a) General rule. Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that . . . an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue.
This provision is phrased, like the common-law rule it embodies, as a "general prohibition subject to exceptions." Id., Commentary to Section 7-3 (a).
 II
The first set of opinions Attorney Elliot is prepared to offer in this case concern defendant Jones' alleged disclosure to Dechert of information relating to representation of certain of its clients. Such information included the names of clients, the designation or description of matters on which PH worked for those clients, who at PH worked on those matters, the rates at which PH charged the clients for such work, and the amounts that PH billed the clients for the representation.
In his letter to Counsel dated April 29, 1999, Attorney Elliot states initially that, in his opinion, the disclosure of such information:
 violated Rule of Professional Conduct 1.6. What was discussed constitutes "information relating to representation of a client" within the meaning of that Rule. My review of the materials provided to me does not indicate that the disclosure of that information to Dechert was "implicitly authorized in order to carry on the representation" or that it fell within the exceptions of Rule 1.6(a)-(d) inclusive. The sole purpose of the disclosure by Mr. Jones appears to have been to promote Dechert's hiring of him and others at CT Page 11784 Pepe Hazard. Indeed, Dechert personnel in their
testimony deny ever having sought any of this data (though had they done so, Jones' violation would be no less).
Letter to Counsel (4/29/99), p. 4. (Emphasis in original.)
So stated, this opinion is an undisguised opinion on a matter of law. It is expressly phrased as an opinion as to the applicability of a particular ethical rule to Attorney Jones's alleged conduct. It thus necessarily involves an expression of an opinion as to the requirements of Rule 1.6, as part and parcel of the opinion that defendant Jones, by his conduct, violated the Rule.
A second problem with the proffered opinion is that by addressing itself to a provision of the Rules of professional Conduct, the opinion concerns an asserted ethical violation that is not at issue in this case. It is well established in this State that civil liability cannot be predicated upon alleged violations of the Rules of professional Conduct. The Rules exist for the separate purpose of controlling lawyer conduct, not of establishing civil claims or causes of action for their proven violation. Here, then, even if Attorney Elliot had an opinion that defendant Jones incurred civil liability because he engaged in particular conduct that violated an ethical rule, his testimony could only concern the nature of the defendant's conduct, not the legal conclusion that that conduct violated the ethical rule.
A final infirmity in Attorney Elliot's proposed testimony as to defendant Jones' alleged violation of ethical rules by disclosing confidential information about PH's clients is that the interests protected by the rules in question, and thus compromised by their violation, are those of PH's clients, not those of PH itself. PH has no standing to assert claims in its own right based upon alleged violations of its clients' rights to prevent disclosure of confidential case-related information. Therefore, the offering of an opinion as to such a violation could not conceivably assist the jury to understand or decide a fact in issue in this case.
Apart from his opinion that the above-described disclosures violated ethical rules designed to protect the interests of PH's clients, Attorney Elliot would offer the opinion that:
 disclosure by Jones to Dechert of the aforesaid client information and disclosures by Dechert of information concerning the business and financial data of Pepe CT Page 11785 Hazard — including how much it received as compensation for legal services, the rates its lawyers charge, its receipts and expenses, its business plans, forecasts for future growth and strategic plans for future success, its past financial history, its realization rates on billings, and kindred nformation violated Jones's duties as a partner in the firm to Pepe Hazard and his fellow partners under the principles of the law of partnership, contracts, agency and fiduciaries, which, together with the Rules of Professional Conduct, makes up that Canon governing the relations of partners inter se and lawyers within a firm commonly understood as the law of lawyering.
Letter to Counsel (4/29/99), p. 5. So phrased, this opinion, like the first opinion discussed above, is quite clearly an opinion as to the requirements of law and an attempted application of those legal principles to the conduct of Attorney Jones in transmitting the information in question to Dechert. As such, it would offer an analysis of legal principles which, however well-informed and clearly articulated, is nothing more than legal argumentation as to the requirements of law on which he believes the jury should be instructed, coupled with an opinion as to how the jurors should apply those principles to the facts of the case, as he understands them. This is not a situation where the law requires proof of fact X to establish violation of a particular duty, and the witness offers expert opinion as to the existence or non-existence of X. Rather, it is a situation in which the witness's avowed purpose is to demonstrate, by his learned testimony, that X is required by the law, then to establish that here there was a violation of law because X occurred. As an opinion on what the law requires, Attorney Elliot's analysis is more appropriately presented by counsel in a trial brief, a legal argument in support of the admission of proffered evidence, or a request to charge, where it can be discussed with the Court and other counsel, in the absence of the jury, to determine the law of the case. Presented as evidence, it invites cross-examination and contradiction before the jury, usurping the Court's power to declare and instruct on the law and potentially confusing the jury on the law if other witnesses offer contradictory views or if the Court instructs differently in its final charge. In short, this is the classic sort of opinion that is excluded as legal opinion because it invades the law-deciding province of the Court, which itself must instruct the jury on the law of lawyering, as it governs the jury's fact-finding inquiry.
The remainder of Attorney Elliot's opinions are all subject to the same evidentiary challenges as his first two opinions. Each began with an CT Page 11786 analysis of the Rules of Professional Conduct and/or the law of lawyering, and concludes with an expression of opinion as to how that law should be applied to particular conduct of one or more of the defendants, as Attorney Elliot expects it to be proved at trial. Each such opinion is thus inadmissible as an opinion on a matter of law, which should be argued by counsel, in a brief or oral argument, not presented as evidence for adversary disputation before the jury.
As to Attorney Jones, Attorney Elliot's additional opinions are as follows: (1) that if Jones "actively sought to induce PH clients to employ Dechert in its stead when Jones became employed at Dechert, he violated his duties to PH under the law of partnership, contracts, agency and fiduciaries described earlier"; Letter to Counsel (4/29/99), p. 5; (2) that "depending on what he said or omitted to say, in the solicitation [of a PH client], he may well have violated his duty to the client under Rule 1.4(b) and, as well, Rule 7.1; id.; (3) to the extent that Attorney Jones worked for Dechert clients while he was still a partner at PH, to the extent that PH did not receive or Jones did not bill for compensation for those services, that Jones violated his duties to PH and his partners at PH under the law of partnership, contracts, agency and fiduciaries; id., (4) to the extent that Jones, while a partner at PH, sought to ingratiate himself with key personnel at PH clients (e.g. by offers of personal or personnel assistance) for the purpose of assisting himself when he came to join Dechert, or took other steps vis-a-vis PH clients or prospective clients while a partner of PH to advance the prospects of Dechert hiring him, or to advance the interests of Dechert and/or himself as a partner at Dechert, at the expense of PH's interests, that would constitute a breach of Jones's fiduciary duties to PH and his PH partners; id.; (5) if Jones solicited PH contract partners, associates or paralegal or other personnel to join him at Dechert while he was still a partner at PH, that would violate his duties to PH and his PH partners under the law of partnerships, contracts, agency and fiduciaries discussed earlier; id., p. 6; (6) that Attorney Jones, as a member of PH's Executive Committee, was in a position of special trust and authority vis-a-vis the firm and his partners, and thus had heightened duties to the firm and his partners under the law of partnership, contracts, agency and fiduciaries; id., and (7) that if Jones, by word or deed, actively sought to mislead his partners at PH as to his plans and intentions with respect to Dechert, he would have violated Rule 8.4(3) of the Rules of Professional Conduct and his duties to PH and his PH partners under the law of partnership, contracts, agency and fiduciaries. Id. Such violations would occur as well if Jones said anything to his PH partners or other PH personnel about his future plans that he knew to be false at the time he said them, or if he remained silent on occasion when honest speech was rightly CT Page 11787 to be expected, thereby leading PH or his partners to believe that his future plans were different than they actually were at the time.
As for Attorneys Boyce and Friedman, two PH partners who left PH with Jones to go to Dechert, Attorney Elliot offers opinions that: (1) they too would have violated Rule 8.4(e) of the Rules of Professional Conduct if they actively sought to mislead their partners or PH as to their plans and intentions with respect to Dechert, and would thereby also have violated their duties to PH and their PH partners under the law of partnership, contracts, agency and fiduciaries; they, like Jones, he would further testify, would have violated Rule 8.4(3) and their above-referenced duties to PH and their partners if they deliberately said things to PH partners or personnel about their future which they then knew to be false or remained silent on any occasion when honest speech was called for to correct misimpressions that might otherwise have been created as to their future plans; id. at 6-7; and (2) in light of their knowledge of Attorney Jones's plans to leave PH and take a significant number of employees in the department he chaired with him, Boyce and Friedman had a fiduciary duty to PH and to their PH partners "either to advise the firm of this important fact; or, at the least, so to act as to ensure that the firm did not make any decisions in reliance on the expectation that Mr. Jones would be remaining with the firm and the department he chaired would remain intact"; id. at 6; the foregoing duty, Attorney Elliot would opine, "was one especially incumbent upon Mr. Boyce during the time he served on PH's Executive Committee, on and after January 31, 1996," and "especially to the extent that the Committee was considering matters affecting the future of the firm, a future in which the continued participation of Mr. Jones and the lawyers in his department (significantly including Messrs. Boyce and Friedman) was understood to be an assumed fact and relevant factor in the Committee's deliberations." Id. at 6.
Finally, as to the conduct of defendant Dechert, Attorney Elliot is prepared to testify that "if its partners in any way requested Jones, or sought to induce Jones, to provide Dechert with any of the data concerning [PH], its operations or its clients of the sort Mr. Jones did provide to Dechert . . ., or to solicit [PH] personnel to join Dechert which Jones was still a partner at [PH], Dechert lawyers would in my opinion be complicit in Jones's violation of [Rules 1.6 and 1.8 of the] Rules of Professional Conduct . . ., in violation of Rule 8.4(1) and its Pennsylvania analogue and, possibly Rule 8.4(3) and its Pennsylvania analogue."
To the extent that the foregoing opinions purport to analyze provisions of the Rules of Professional Conduct, as adopted in Connecticut, or their CT Page 11788 analogues in Pennsylvania, they are irrelevant to this case, since civil liability cannot be predicated on violations of ethical rules. To the degree that the opinions posit the existence of "fiduciary duties" or other duties arising under the "law of partnership, contracts, agency and fiduciaries," they constitute pure opinions on matters of law which must be left to the Court to decide, with input from counsel in legal argument, not input from an expert, however well qualified, in the form of opinion testimony. The parties, to reiterate, can submit trial briefs on these issues and proper requests to charge.
In the end, the jury must be presented with a clear, correct and comprehensive statement of controlling law in the judge's binding instructions. Such instructions must be followed to the exclusion of inconsistent notions of the law which jurors might harbor or the lawyers might suggest in their arguments. Surely they should not be contradicted or secondguessed by the jury based on quasi-evidentiary input from an expert witness who may express different views.
Finally, insofar as the opinions of Attorney Elliot would apply the legal principles he is prepared to analyze and discuss to particular facts as they may be proved at trial, such offerings are expressions of opinion on ultimate issues in the case, which have not been shown to be necessary for the jury's understanding of any factual issue it must resolve. Indeed, the plaintiff's argument in support of Mr. Elliot's testimony proves too much. The plaintiff insists that what is difficult to understand in this case is the law, not the facts. Hence, its witness is offered to explain the law in a way the trial judge assertedly cannot do. This is not a case where the law is straightforward, but the existence or non-existence of facts establishing a claim require detailed explanation or specialized knowledge based on skill or experience in a field with which jurors are not familiar. Here, instead, if the governing law is found by the trial court to be consistent with Mr. Elliot's analysis of the law of lawyering, proof of facts needed to establish violations of that law will be relatively straightforward. Mr. Elliot is not offered to establish the facts that would prove the violations he describes. Rather, he is offered, as the expert he is, on the law that should govern the jury's assessment of the historical facts. Because such testimony is inadmissible in this State, the defendants' pending motion in limine to exclude it must be GRANTED.
IT IS SO ORDERED this 11th day of September, 2002
Michael R. Sheldon, J. CT Page 11789